**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| SAMUEL T. FREEMAN & CO., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PETER HIAM, HELEN HIAM, | : | NO.  12-1387 |
| TING WANG, and MR. LIU, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                    June 11, 2012

Presently before the Court is the Motion of Defendants Peter Hiam and Helen Hiam

(collectively hereinafter "Defendants" or "the Hiams")[1] to Dismiss, Stay, or Transfer the Interpleader

Complaint of Plaintiff Samuel T. Freeman & Co. ("Plaintiff" or "Freemans"). For the following

reasons, the Motion is denied in its entirety.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This matter involves a dispute related to the auction of a rare and very valuable antique

Chinese Ming vase.  The Hiams are the sellers of the vase, and are residents of Cambridge,

Massachusetts.  (Interpleader Compl. ¶ 2.)  Freemans is the oldest auction house in America, and is

located in Philadelphia, Pennsylvania.  (Id. ¶¶ 1, 10.)  Although not parties to the instant Motion, the

conduct of Defendants Mr. Liu ("Liu") and Ting Wang ("Wang") lie at the heart of this dispute.  Liu,

_____

[1] Ting Wang and Mr. Liu are also listed as Defendants in this matter, but are not parties to
the instant Motion.

a Chinese national, is the actual purchaser of the rare vase. (Id. ¶¶ 4, 21.) Wang, also a resident of China, acted at all relevant times as Liu's agent in the purchase of the vase. (Id. ¶¶ 3, 16–21.)

In February 2011, the Hiams agreed to consign the vase to Freemans for auction purposes. (Id. ¶ 11.) Prior to the auction, the Hiams and Freemans entered into a written Consignment Agreement, according to which the parties agreed to a reserve price, Freemans' commission from the sale, and that Freemans could charge a premium to the buyer. (Id. ¶¶ 11, 12.) Incorporated within the Consignment Agreement were certain Terms and Conditions of Sale ("Conditions of Sale"), one of which stated that the buyer of the vase was to make full payment within ten days of its sale. (Id. ¶¶ 12, 14.) If the buyer did not make payment within the specified ten days, the Conditions of Sale provided that Freemans could charge the buyer late, storage, and handling fees, and could cancel the sale, thereby permitting it to resell the vase or return it to the Hiams, while retaining all payments made by the buyer as liquidated damages. (Id. ¶ 14.) The Conditions of Sale likewise contained a forum selection clause, providing that all disputes arising from the parties' contractual relationship would be litigated in the Philadelphia Court of Common Pleas or the United States District Court for the Eastern District of Pennsylvania. (Id. ¶ 9.)

On March 19, 2011, Freemans auctioned off the vase in its Fine and Decorative Asian Arts Auction in Philadelphia. (Id. ¶ 15.) Wang was physically present at the event, and placed the winning bid at a hammer price of $1.2 million. (Id. ¶ 16.) Including the $185,500 buyer's premium, the total purchase price of the vase was $1,385,500. (Id.) According to Freemans, Wang identified himself as the actual buyer of the vase, and made no mention that he was serving as Liu's agent at this time. (Id.)

The buyers did not make full payment for the vase within the specified ten days of sale. (Id.

¶ 17.) Instead, Wang made several incremental payments totaling $750,000 to Freemans over the course of several months, $322,300 of which was transferred to the Hiams. (Id. ¶¶ 18–23.) According to Defendants, in light of the buyer's default, they "persistently and repeatedly" directed Freemans to cancel the sale from October 2011 onward, but were told that they had no right to cancel a sale that had already taken place. (Defs.' Mot. Dismiss 3–4.) According to Freemans, it was making "continued efforts" to collect the remaining balance due on the vase during this time. (Interpleader Compl. ¶ 19.)

In January of 2012, Wang informed Freemans for the first time that he was not the actual buyer of the vase, but rather had been acting as Liu's agent during the course of the sale. (Id. ¶ 21.) Wang further informed Freemans that Liu intended to visit Philadelphia in March of 2012, and would pay the balance due on the vase at that time. (Id.)

On February 1, 2012, Freemans sent the buyers a letter cancelling the sale, citing their continuous default on their obligation to make full payment. (Id. ¶ 22.) The cancellation letter also imposed a $148,390 late charge, and provided that the $750,000 paid by the buyers thus far would be retained by Freemans as liquidated damages. (Defs.' Mot. Dismiss 4.) The cancellation letter further called for an additional payment of $818,390 from the buyers, and asserted that $35,000 in legal fees would be deducted from the amount Freemans had been retaining. (Id.) Since the time of cancellation and at present, Freemans remains in possession of both the vase and $427,700 of the total $750,000 of payments made by the buyers. (Interpleader Compl. ¶ 23.)

On February 21, 2012, the Hiams sent Freemans a Demand for Relief Letter ("the Demand Letter") seeking relief from Freemans pursuant to the Massachusetts Consumer Protection Statute, M.G.L. c. 93A §§ 1 et seq. (Id. at ¶ 25.) Specifically, the Hiams sought the immediate return of the

vase, the remainder of the purchase price, and an additional unspecified amount of damages and fees. (Id.) The Demand Letter further provided that Freemans had thirty days to respond under the statute's timing requirements. (Pl.'s Resp. Opp'n 6.)

On March 12, 2012—a week prior to the expiration of the thirty-day time limit set by M.G.L. c. 93A—the Hiams filed an action against Freemans in the United States District Court for the District of Massachusetts seeking declaratory and injunctive relief and monetary damages ("the Massachusetts Action"). (Defs.' Mot. Dismiss 4.) On March 19, 2012, Freemans responded to the earlier Demand Letter in detail. (Id. at 2.) In its March 19th letter, Plaintiff informed Defendants that, due to their filing of the Massachusetts Action, it had filed the instant Interpleader Complaint in the United States District Court for the Eastern District of Pennsylvania ("the Interpleader Action" or "the Pennsylvania Action"), purporting to be a holder of two different stakes in this litigation—the valuable vase and the $427,700 amount paid by the buyer but retained by Freemans. (Id. at 2, 7.) The Interpleader Action likewise includes Wang and Liu as defendants in the instant litigation. The Interpleader Action also requests this Court to determine the rightful owner of both stakes of property, and seeks to enjoin the commencement or pursuit of any other action related to this subject matter. (Interpleader Compl. ¶ 37 A–E.) On March 26, 2012, after the thirty day time period of M.G.L. c. 93A had run, the Hiams amended their complaint in the Massachusetts Action to include a claim under the statute. (Pl.'s Resp. Opp'n 20.)

The Hiams filed the instant Motion to Dismiss the Interpleader Complaint on April 12, 2012. Freemans filed a Response in Opposition on April 26, 2012, and Defendants replied on May 3, 2012. Plaintiff filed a Sur-reply on May 10, 2012, making this issue ripe for judicial consideration.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the

fundamental underpinnings of the Rule 12(b)(6) standard of review.  Arner v. PGT Trucking, Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

The Hiams assert that the Interpleader Complaint should be dismissed because the "first-filed rule" applies under these circumstances.  (Defs. Mot. Dismiss 8.)  In response, Freemans asserts that Defendants' request for dismissal be denied because the facts of this case fall within several exceptions to the first-filed rule.  (Pl.'s Resp. Opp'n 2.)  The Court initially considers whether the first-filed rule applies in the first instance here, and, if so, will then determine whether this case falls within any of the recognized exceptions to the rule.

### A.    Application of the First-Filed Rule in the First Instance

The "first-filed rule" provides that: "'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'"  EEOC v. Univ. of Penn., 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)) (further citation omitted).  The date of the original complaint, rather than any amended complaint,

is the determinative date for purposes of the first-filed rule. See Colony Nat'l Ins. Co. v. UHS Child. Servs., Inc., No. Civ.A.09-2916, 2009 WL 3007334, at *2 n.5 (E.D. Pa. Sept. 11, 2009) (further citation omitted). The rule was established to encourage sound judicial administration and promote comity among federal courts of equal rank. EEOC, 850 F.2d at 971. It has been recognized that "'[i]t is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals.'" Violet Pot, LLC v. Lowe's Co., Inc., No. Civ.A.06-4138, 2007 WL 894187, at *2 (D.N.J. Mar. 20, 2007) (quoting EEOC, 850 F.2d at 974) (further citation omitted). Moreover, "due consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule." Koresko v. Nationwide Life Ins. Co., 403 F.Supp.2d 394, 400 (E.D. Pa. 2005).

The Hiams allege that the rule applies under the present circumstances. The logic of their argument is as follows: the Massachusetts Action was filed first on March 12, 2012, while the Interpleader Action was subsequently filed on March 19, 2012. Dismissal of the later-filed Interpleader Action is therefore required because both "arise from the same set of operative facts, involve the same transactions, concern the same Property and Proceeds, involve the same parties, and turn on the same set of legal issues." (Defs.' Mot. Dismiss 8.) The Hiams further allege that once the complaint was served on Freemans in the District of Massachusetts, the Interpleader Action converted into a "compulsory counterclaim." (Id. at 9.)

Under appropriate circumstances, courts should consider the first-filed and compulsory counterclaim rules jointly. See Hanover Fire & Cas. Ins. Co. v. Sieron, No. Civ.A.06-2758, 2007 WL 120058, at *3 (E.D. Pa. Jan. 9, 2007) (citing Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., Inc., 416 F.Supp.2d 1048, 1053–54 (E.D. Pa. 2006)); see also Jermax, Inc. v. AK Steel Corp., No.

7

Civ.A.09-4438, 2010 WL 2652276, at *9 (D.N.J. June 24, 2010). The general compulsory

counterclaim rule is set forth in Rule 13(a) of the Federal Rules of Civil Procedure, and provides:

> A pleading must state as a counterclaim any claim that—at the time of its
> service—the pleader has against an opposing party if the claim:
>> (A) arises out of the transaction or occurrence that is the subject matter of the
>> opposing party's claims; and
>> (B) does not require adding another party over whom the court cannot acquire
>> jurisdiction.

Fed. R. Civ. P. 13(a)(1)(A–B). "The Rule is designed 'to achieve resolution in a single lawsuit of

all disputes arising out of common matters.'" Zelenkofske Axelrod Consulting, LLC v. Stevenson,

No. Civ.A.99-3508, 1999 WL 592399, at *1 (E.D. Pa. Aug. 5, 1999) (quoting S. Constr. Co. v.

Pickard, 371 U.S. 57, 60 (1962)). Rule 13(a) requires a party to assert all counterclaims it may have

against an opposing party, and bars the initiation of a second lawsuit based upon any such

counterclaims. See Zelenkofske, 1999 WL 592399, at *1 (internal citations omitted). A counterclaim

qualifies as "compulsory" under Rule 13(a) if it "bears a logical relationship to an opposing party's

claim such that separate trials on each party's claim would involve a substantial duplication of

effort." Id. at *2 (citing Savarese v. Agriss, 883 F.2d 1194, 1208 (3d Cir. 1989)) (internal quotation

marks omitted). Claims are "logically related" if they involve: (1) many of the same factual issues;

(2) substantially similar legally issues; or (3) are "offshoots of the same basic controversy between

parties." Zelenkofske, 1999 WL 592399, at *2 (citing XEROX Corp. v. SCM Corp., 576 F.2d 1057,

1059 (3d Cir. 1978)).

Here, the Interpleader Action requests determination of the lawful owner of the vase and the

auction proceeds. The Massachusetts Action seeks declaratory and injunctive relief related to the

possession of the vase and auction proceeds, and also asserts claims for breach of contract, breach

of fiduciary duty, conversion, and violations of the Pennsylvania and Massachusetts consumer protection statutes. (Defs.' Mot. Dismiss 3–4.) As such, it is evident that "separate trials on each party's claim would involve a substantial duplication of effort" because the two actions involve many of the same factual and legal issues, and are both essentially "offshoots of the same basic controversy." Thus, there is no question that the first requirement of Rule 13(a), defined in subpart (A), is satisfied under these circumstances.

Subpart (B) of the Rule, however, further provides that designation of a claim as a "compulsory counterclaim" is impermissible if the claim would require the addition of another party over whom the court cannot acquire jurisdiction. See Fed. R. Civ. P. 13(a)(1)(B). Similarly, the first-filed rule likewise provides that the court of first-filing can only proceed to decide the matter if both actions involve "*the same parties* and issues." Zelenkofske, 1999 WL 592399, at *2 n.1 (emphasis added). Here, the Interpleader Action asserts claims against Wang and Liu as defendants, while the Massachusetts Action solely brings suit against Freemans. Thus, subsuming the Interpleader Action into the Massachusetts Action would require the District Court of Massachusetts to assert personal jurisdiction over Wang and Liu. In order to do so, the requirements of the Massachusetts long-arm statute, M.G.L. c. 223A § 3(a), would need to be met, as well as the two-pronged personal jurisdiction inquiry set forth by the Supreme Court in International Shoe Company v. Washington, 326 U.S. 310, 316 (1945) and its progeny.

Neither party, however, has properly briefed the Court on this issue. The Hiams merely state that:

Although the statutory interpleader would involve an additional party (the Buyer), the District Court of Massachusetts would have jurisdiction over that additional party since statutory interpleader is bottomed on nationwide service. Put simply, if Freemans can successfully serve the Buyer and bring him (or them) to the Eastern District of Pennsylvania, for precisely the same reasons personal jurisdiction over the

buyer can be exercised by the District Court in Massachusetts.

(Defs.' Mot. Dismiss 9.)  The Hiams provide no citation to any legal authority for these conclusory statements.  They also fail to cite the Massachusetts long-arm statute, and do not allege any facts indicating that Wang or Liu had any contact with Massachusetts such that the exercise of personal jurisdiction over them there would be appropriate.  Freemans, on the other hand, cursorily states in a separate section of its Response in Opposition discussing an exception to the first-filed rule[2] that: "the Buyers, who are Chinese nationals, have no connection with Massachusetts." (Pl.'s Resp. Opp'n 19.)  It does not, however, expand on its statement or address the exercise of personal jurisdiction in Massachusetts in more detail.

Given the lack of information before it regarding personal jurisdiction over Wang and Liu in Massachusetts, the Court is unable to conclusively determine at this time whether the first-filed rule applies under these circumstances.  For the same reason, the Court does not agree with Defendants' assertion that the Interpleader Complaint should be converted into a Rule 13(a) compulsory counterclaim in the Massachusetts Action.  Therefore, dismissal of the Interpleader Complaint on this basis is impermissible at this time.

## B.    Exceptions to the First-Filed Rule

Even if the Court were to assume—for purposes of this Motion only—that the first-filed rule applied under these circumstances, dismissal of the Interpleader Complaint would nonetheless be denied because the facts of this case fall within certain exceptions to the first-filed rule.

---

[2] Specifically, Freemans' discussion of this issue appears in the section of its brief asserting that this case warrants an exception to the first-filed rule because the Hiams failed to join Wang and Liu as necessary parties to the Massachusetts Action under Rule 19 of the Federal Rules of Civil Procedure.  The Court addresses this issue in detail, *infra*.

The party opposing the first-filed rule has the burden of showing that special circumstances exist that bar the rule's application to a particular case. <u>Violet Pot, LLC v. Lowe's Co., Inc.</u>, No. Civ.A.06-4138, 2007 WL 894187, at *3 (D.N.J. Mar. 20, 2007) (further citation omitted). Although such departures were previously considered a rarity, <u>see</u> <u>Polsky v. Hall City Ctr. Assoc. Ltd. P'ship</u>, No. Civ.A.88-9086, 1989 WL 48109, at *2 (E.D. Pa. May 4, 1989), courts within this circuit have recently commented that "[e]xceptions to the first-filed rule are no[] [longer] rare and are made when justice or expediency requires[.]" <u>FMC Corp. v. AMVAC Chem. Corp.</u>, 379 F.Supp.2d 733, 744 (E.D. Pa. 2005) (citing <u>Drugstore-Direct, Inc. v. The Cartier Div. of Richemont N. Am., Inc.</u>, 350 F.Supp.2d 620, 623 (E.D. Pa. 2004); <u>Hunt Mfg. Co. v. Fiskars Oy AB</u>, No. Civ.A.97-2460, 1997 WL 667117, at *3 (E.D. Pa. Oct. 2, 1997)). Departures from the rule are recognized in the following situations:

> (1) if extraordinary circumstances are present in a given case; (2) the plaintiff filing the first action acted in bad faith; (3) the plaintiff in the first action was merely forum shopping; (4) the later-filed action is further along than the first-filed action; and (5) the plaintiff in the first action filed suit in anticipation of the opposing party's imminent suit is another, less favorable, forum.

See <u>EEOC</u>, 850 F.2d at 976; <u>Koresko</u>, 403 F. Supp.2d at 399 (internal citations omitted). In the instant case, Freemans asserts that the circumstances present in this case fall within the extraordinary circumstances, bad faith, forum shopping, and anticipatory exceptions. The Court considers each allegation in turn.

### 1. Extraordinary Circumstances—The Forum Selection Clause

The presence of a valid forum selection clause may serve as an "extraordinary circumstance" that would justify a departure from the first-filed rule. See <u>Pep Boys, Manny, Moe & Jack v. Am. Waste Oil Servs., Corp.</u>, No. Civ.A.96-7098, 1997 WL 367048, at *7–8 (E.D. Pa. June 25, 1997);

Koresko, 403 F. Supp.2d at 400. Here, Freemans claims that the Hiams' request for dismissal be denied because the Conditions of Sale portion of the Consignment Agreement contains a mandatory forum selection clause providing that all parties agree to the exclusive jurisdiction of the Eastern District of Pennsylvania. In response, Defendants allege that this mandatory provision is overridden by another clause in the contract merely providing for permissive, not exclusive, jurisdiction in Pennsylvania.

It is uncontested that the Conditions of Sale are expressly incorporated into and integrated into the Consignment Agreement. This is evidenced by the language of the Consignment Agreement itself, which provides that: "This Agreement, including . . . the Conditions of Sale, constitute the entire agreement between the parties[.]" (Pl.'s Resp. Opp'n, Ex. A attached to Ex. 1, Consignment Agreement ("Consign. Agree.") ¶ 12.) The Consignment Agreement further provides that: "[i]n the event of a conflict between the Conditions of Sale and this Agreement, the terms of this Agreement shall control." (Id. ¶ 1.)

The Conditions of Sale includes a mandatory forum selection clause: "Consignor and Buyer agree to the *exclusive jurisdiction* of the . . . United States District Court for the Eastern District of Pennsylvania." (Pl.'s Resp. Opp'n, Ex. E attached to Ex. 1, Terms & Conditions of Sale Agreement ("Conditions of Sale") ¶ 18) (emphasis added). The Consignment Agreement, on the other hand, includes a choice of law and permissive jurisdiction clause, stating that:

> [T]his Agreement shall be construed and interpreted under the laws of the Commonwealth of Pennsylvania and [the Hiams] agree[ ] that . . . the United States District Court for the Eastern District of Pennsylvania ha[s] personal jurisdiction over [them] in connection with any lawsuit under this Agreement . . .

(Consign. Agree. ¶ 10.1.) It is well-established that clauses that merely empower a court to hear

litigation and in effect waive any objection to personal jurisdiction in that court—commonly referred to as "consent to jurisdiction" clauses—are "permissive" in that they allow parties to air any dispute in a specific court without requiring them to do so. See Koresko, 403 F. Supp.2d at 400 (internal citations omitted); Pep Boys, 1997 WL 367048, at *7; Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG, 440 F. Supp.2d 357, 363 n.1 (D.N.J. 2006). The Hiams allege that the two jurisdictional clauses are "in conflict" with one another, and that, in accordance with the language of the contract, the language of the Consignment Agreement—which provides for permissive jurisdiction—should control. In response, Freemans avers that the two provisions are not in conflict, but rather are merely "different" from one another, and therefore can be interpreted harmoniously.

"Forum selection clauses are generally treated as ordinary contract provisions and are subject to ordinary rules of contract interpretation." Integrated Health Res., LLC v. Rossi Psychol. Grp., 537 F. Supp. 2d 672, 674 (D.N.J. 2008) (citing John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997)) (further citation omitted). When interpreting the provisions of a contract, "a court's paramount consideration is the intention of the parties." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980). "Ideally, the clearest indication of the parties' intent is the language of the contract itself." Rossi, 537 F. Supp.2d at 674 (citing Mellon Bank, 619 F.2d at 1009).

Here, the two contractual provisions do appear to be in conflict. One provision indicates that a lawsuit may be brought in Pennsylvania, while another mandates that suit be brought in this District. What one is *permitted* to do and *required* to do are distinct concepts. When interpreted alongside one another, a party cannot bring suit in Massachusetts under the contract without violating the exclusive jurisdiction clause. Thus, the two clauses conflict. In such an instance, the

language of the contract itself indicates the parties' intent to have the permissive clause in the broader Consignment Agreement govern.  Thus, it was possible for the Hiams to bring suit in Massachusetts without violating the terms of the contract.

However, even though the Hiams could file suit in Massachusetts without violating the contract, it is well recognized that "a court should decline to adjudicate a matter governed by a mandatory forum selection clause that vests authority in a different jurisdiction." Sail Labs, 440 F. Supp.2d at 357.  Thus, merely because the District of Massachusetts *can* hear this dispute does not means that it *should*.  In fact, both the permissive and mandatory clauses at issue vest authority in the Eastern District of Pennsylvania.  It has been established that clauses designating a specific forum are prima facie valid and should be given effect unless enforcement is shown to be unreasonable under the circumstances.  Nemo Assoc., Inc. v. Homeowners Mktg. Servs. Int'l, Inc., 942 F.Supp. 1025, 1028 (E.D. Pa. 1996) (citing The Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972)).  "A forum selection clause is unreasonable where the resisting party can make a strong showing that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court or that the clause was procured through fraud or overreaching.'"  Nemo Assoc., 942 F.Supp. at 1028 (quoting Foster v. Chesapeake Ins. Ltd., 933 F.2d 1207, 1219 (3d Cir.1991); The Bremen, 407 U.S. at 12–13) (further citation omitted).

The Hiams have made no showing here that litigating this suit in Pennsylvania would be so gravely difficult and inconvenient for them such that they would be deprived of their day in court. Nor have they pointed to any facts indicating that the designation of Pennsylvania as the rightful forum in the contract was procured by fraud or overreaching.  To the contrary, the circumstances present in this case weigh *in favor* of litigating the suit here. All property related to this

suit—notably, the vase and auction proceeds—is located in Philadelphia. Moreover, the permissive jurisdiction clause upon which the Hiams rely also includes a choice of law provision providing that Pennsylvania law applies to any dispute arising under the contract. Familiarity with local law, judicial economy, and common sense dictate that a Pennsylvania court should interpret provisions of Pennsylvania law, rather than having Massachusetts interpret the laws of a distant forum. Finally, and perhaps most importantly for present purposes, all parties, including Liu and Wang, previously consented to suit in the Eastern District of Pennsylvania. As such, it is uncontested that jurisdiction would be proper over all parties in this forum, while it remains open to inquiry whether jurisdiction could likewise be asserted over everyone in the District of Massachusetts.

Therefore, the circumstances present in this case indicate that the forum selection clause placing suit in Pennsylvania—rather than Massachusetts—qualifies as an extraordinary circumstance exception to the first-filed rule. As such, departure from the first-filed rule is permissible on these grounds.

### 2. Extraordinary Circumstances—Failure to Join a Necessary Party

Freemans also avers that, in the event that the first-filed rule applies to the circumstances of this case, departure from the rule is justified because the Hiams failed to join Wang and Liu as necessary parties in the Massachusetts Action. In response, the Hiams contend that Wang and Liu are not considered necessary parties under the standard set forth by the Federal Rules of Civil Procedure.

Generally, in order for the first-filed rule to apply, the parties in both actions must be the same. Colony Nat'l Ins. Co. v. UHS Child. Servs. Inc., No. Civ.A.09-2916, 2009 WL 3007334, at *2 (E.D. Pa. Sept. 11, 2009); Maertin v. Armstrong World Indus., Inc., 241 F.Supp.2d 434, 453

(D.N.J. 2002) (internal citations omitted); <u>Abushalieh v. Am. Eagle Express, Inc.</u>, 716 F.Supp.2d 361, 366 (D.N.J. 2010) ("[T]he Third Circuit has repeatedly applied the rule to cases involving the 'same parties.'"). The failure to name all necessary parties in the first-filed action may serve as a basis for departing from the rule. <u>See</u> <u>Whelan v. United Pac. Indus.</u>, No. Civ.A.02-2519, 2002 WL 31513432, at *2 (E.D. Pa. Nov. 1, 2002).[3]

Joinder of necessary parties is governed by Rule 19 of the Federal Rules of Civil Procedure. The joinder of a necessary party to a given action is determined through a two-step process. <u>CGL, LLC v. Schwab</u>, No. Civ.A.11-04593, 2011 WL 4528300, at *1 (E.D. Pa. Sept. 30, 2011). The first step under subsection (a) of the Rule requires the court to determine whether a party is "necessary" to the dispute in the first instance. <u>Id.</u> If the party is not determined to be necessary, then the inquiry need not go further. <u>Coregis Ins. Co. v. Wheeler</u>, 180 F.R.D. 280, 282 (E.D. Pa. 1998). If the party is deemed necessary, however, then the court should proceed to step two of the analysis under subpart (b) of the Rule, and join the party if feasible. <u>Id.</u> at 283. Where joinder of a necessary party is not feasible—such as when subject matter jurisdiction would be destroyed—the court must next consider whether that party is "indispensable" to the suit. <u>Id.</u>

Under Rule 19(a), a party is considered "necessary" to an action if:

---

[3] The Court is cognizant of the fact that <u>Whelan</u> is distinguishable from the instant litigation. In <u>Whelan,</u> the court recognized that a failure to name all necessary and desirable parties could constitute a special circumstance warranting departure from the first-filed rule, but nonetheless found that the defendants' alleged failure to join a necessary party to the complaint in that case did not warrant an exception to the rule. <u>Whelan v. United Pac. Indus.</u>, 2002 WL 31513432, at *2. The <u>Whelan</u> Court specifically based its finding on the fact that the failure to join the parties at issue was "an easily correctable oversight" that would by cured by "the likely event that defendant amends its California complaint." <u>Id.</u> In this case, the Hiams have already amended their complaint in the District of Massachusetts. Moreover, they have repeatedly made clear their intention not to join the buyers as parties to the Massachusetts Action.

> (1) in that person's absence, the court cannot accord complete relief among existing parties; or
> (2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If either requirement is satisfied, then the absent party will be considered a necessary party that should be joined to the legal action if possible. CGL, 2011 WL 4528300, at *1.

Here, Liu and Wang are necessary parties to the Massachusetts Action because they maintain an interest related to the subject matter of the action. This is evidenced by the substance and nature of the Amended Complaint that the Hiams filed in the District of Massachusetts. In support of their request for declaratory and injunctive relief in Count I, the Hiams assert that they have been damaged by the buyers' breach of contract because the liquidated damages provision in the Conditions of Sale is an "unenforceable penalty" under Pennsylvania law. (Pl.'s Resp. Opp'n, Ex. A attached to Ex. 1, Amended Complaint ("Mass. Am. Compl.") ¶ 62; Defs.' Reply 9.) According to the Hiams, because the liquidated damages provision is unenforceable, Pennsylvania law would require the $750,000 paid by the buyers "to be held to pay damages established by resale, if any, and then, if Funds remain, they [would] be returned to the Buyer in restitution[.]" (Defs.' Reply 10.) Thus, the Hiams' own complaint recognizes that Liu and Wang have a restitutionary interest related to the subject matter of the Massachusetts Action.

Furthermore, the liquidated damages provision at issue is located in the Conditions of Sale portion of the Agreement—a document that is binding upon Freemans, the Hiams, *and* the buyers. The Hiams also claim that they are entitled to late charges and damages under the Conditions of Sale,

and that the buyers breached the payment condition when they failed to make payment within ten days, thereby triggering the cancellation provision of this same document. As parties bound by the Conditions of Sale, Liu and Wang obviously should be entitled to protect their interests in this dispute.[4]

Moreover, in Count II of their Amended Complaint filed in Massachusetts, the Hiams bring a breach of contract claim against Freemans. Specifically, the Hiams allege breach because Freemans failed:

> (1) to provide an enforceable liquidated damages provision in its agreement with the Buyer such that upon breach by the Buyer and the cancellation of the Sale, the Hiams would be able to retain a liquidated sum and would not have to litigate its actual damages against the Buyer in a further proceeding; (2) to provide an enforceable late charge [against the Buyers] that would protect the[m] from the loss associated with delayed payment; (3) . . . to impose a late charge on the Buyer . . . (4) to follow the instructions of the Hiams as its principal in its dealings with the Buyer . . . ; (5) to provide an accounting of funds received from the Buyer . . . ; and (6) to return the Property to the Hiams upon the cancellation of the Sale.

(Mass. Am. Compl. ¶ 69.) Although the Hiams assert the breach of contract claim against Freemans, it is evident from the language of Count II that the underlying cause of the alleged contractual breach was the actions of the buyers. As the alleged cause of the breach, Wang and Liu have an interest in defending themselves and having their interests aired. Otherwise, they run the risk of incurring inconsistent judicial findings that could prejudice them in any subsequent action related to this subject matter—such as one based on liquidated damages or their restitutionary interest.

---

[4] Although the Hiams dedicate approximately ten pages of their Reply Brief discussing why they are the rightful owners of the vase and auction proceeds, this discussion is inappropriate at this initial procedural stage of proceedings. The relevant inquiry at this point is not who is the rightful owner of the vase and/or auction proceeds, but rather is whether or not the buyers have an interest in the subject matter of this lawsuit such that they would be considered necessary parties to its resolution. All substantive arguments related to the ownership of the property will be fully considered at the summary judgment stage or fully litigated at trial.

The Court also notes that Defendant Wang recently filed an Answer and New Matter to the Pennsylvania Interpleader Complaint in the Eastern District of Pennsylvania. (See Docket No. 12-01387, Doc. 15, Answer of Def., Ting Wang, to Interpleader Compl. of Pl. with New Matter and Cross-Claim ("Wang Answer").) In his motion, Wang asserts a breach of contract cross-claim against the Hiams, alleging that they led him to believe that he could pay the remaining balance on the vase in March of 2012, and that their "refus[al] to complete the sale as agreed" constituted a breach. (Wang Answer ¶¶ 41, 42.) Based on this claim, Wang requests ownership of the vase upon full payment, or that the Court order the return of the funds already paid. (Id. at ¶¶ 42 A–B.)

This cross-claim in the Pennsylvania Interpleader Action serves as further evidence of the fact that Wang should have been joined as a party in the Massachusetts Action. More specifically, both Wang and the Hiams have now claimed an interest in the subject matter of this suit—the vase and auction proceeds. As such, allowing the Massachusetts Action to proceed in Wang's absence could "as a practical matter impair or impede [his] ability to protect [that] interest" or leave him "subject to a substantial risk of incurring . . . otherwise inconsistent obligations because of that interest." Fed. R. Civ. P. 19(a).

Therefore, based on the above, the Court finds that the buyers were necessary parties that should have been joined in the Massachusetts Action.[5] As such, even if the first filed rule were to apply under these circumstances, the court nonetheless finds that the Hiams' failure to include them

---

[5] Once a party is deemed necessary, it should be joined to the action if possible. Coregis, 180 F.R.D. at 282. Subpart (b) of Rule 19 provides that if the party is deemed necessary but joinder of it is not feasible, then the court must determine "in equity and good conscience" whether the action should proceed among the existing parties or should be dismissed. See Fed. R. Civ. P. 19(b). Here, such a determination would be left to the discretion of the court in the District of Massachusetts. This Court, located in the Eastern District of Pennsylvania, lacks the authority to dismiss an action filed before its sister court in Massachusetts. As such, this Court need not engage in an analysis of the second step of the Rule 19 procedure.

as parties in that litigation qualifies as a circumstance warranting departure from adherence to the rule. See Whelan, 2002 WL 31513432, at *2; EEOC, 850 F.2d 969, 971 (3d Cir. 1988).[6]

### 3. Anticipatory Action and Bad Faith Conduct

An exception to the first-filed rule has been recognized in cases where the first action was improperly filed in anticipation of the opposing party's imminent suit in another, less favorable, forum. See Zelenkofske Axelrod Consulting, LLC v. Stevenson, No. Civ.A.99-3508, 1999 WL 592399, at *2 (E.D. Pa. Aug. 5, 1999) (citing EEOC, 850 F.2d at 976). "Some evidence that a first-filed case was filed for the purpose of forum shopping or in bad faith is necessary before courts [may] find it was improperly anticipatory, and therefore warranted a departure from the first-filed rule." Koresko, 403 F.Supp.2d at 401 (footnote omitted).

On February 21, 2012, the Hiams sent Freemans a Demand Letter pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A, under which recipients of such letters have

---

[6] In their Motion to Dismiss, the Hiams allege that any issues stemming from the failure to name Wang and Liu as defendants in the Massachusetts Action "would be moot had Freemans simply filed its statutory interpleader as a compulsory counterclaim" in the first-filed Massachusetts Action. (Defs.' Reply 4; Defs.' Mot. Dismiss 13.) Moreover, the Hiams allege that they could not named Wang or Liu as defendants in the Massachusetts Action because they did not know who the buyers were or where they resided at the time that they filed the action, and only became privy to this knowledge on February 16, 2012 when Freemans provided them with certain paperwork. (Defs.' Reply 4 n.2.)

As an initial matter, this argument is illogical because the Hiams did not file the Complaint Action until March 12, 2012—almost an entire month after obtaining knowledge of the buyers. The Hiams then proceeded to amend this complaint on March 26, 2012. Thus, the record indicates that they had ample opportunity to join the buyers as defendants to the Massachusetts Action.

Moreover, despite their allegations to the contrary, subsuming the Interpleader Action into the first-filed action by way of a compulsory counterclaim would not "moot" any issues related to the absence of Wang and Liu as defendants in the Massachusetts Action. As discussed above, Rule 13(a)(1)(B) provides that a compulsory counterclaim is impermissible if the claim would require the addition of a party over whom the court cannot acquire jurisdiction. Serious questions linger here as to whether or not Wang and/or Liu would be subject to personal jurisdiction in the District of Massachusetts.

a thirty day time window to respond.[7]  In their detailed twenty-two page Demand Letter, the Hiams

made numerous demands and allegations against Freemans, and explicitly stated that the auction

house had thirty days to respond.  (Pl.'s Resp. Opp'n, Ex. F attached to Ex. 1, <u>Demand for Relief</u>

<u>under M.G.L. c. 93A</u> ("Demand Letter").)  Prior to the expiration of the thirty day time window,

however, the Hiams filed the Massachusetts Action on March 12, 2012—a mere twenty-one days

after the filing of their Demand Letter.  Notably, this complaint did not include a M.G.L. c.93A

claim.  Freemans provided a detailed response to the Demand Letter within the thirty-day time

window on March 19, 2012, and likewise filed the Pennsylvania Interpleader Action on that same

day.  A week later, after the thirty-day time period on the M.G.L. c.93A claim expired, the Hiams

amended their initial complaint to include a claim based on the Massachusetts statute.  Freemans

now avers that the Hiams' filing of the Massachusetts Action prior to the expiration of the thirty-day

M.G.L. c. 93A time window was an improper anticipatory action motivated by their bad faith

conduct and a desire to forum shop.

     The Third Circuit and courts within its jurisdiction have regularly recognized that an initial

filing may be deemed improperly anticipatory if the first-filing party initiated suit within the response

period set by a demand letter.  <u>See</u> <u>EEOC</u>, 850 F.2d at 973; <u>FMC Corp v. AMVAC Chem. Corp.</u>,

379 F.Supp.2d 733, 743–49 (E.D. Pa. 2005); <u>Drugstore-Direct, Inc. v. The Cartier Div. of Richemont</u>

---

[7] The Massachusetts Consumer Protection Statute provides in relevant part:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.

M.G.L. c. 93A § 9(3).

N. Am., Inc., 350 F.Supp.2d 620, 623 (E.D. Pa. 2004); Kim v. Kim, 324 F.Supp.2d 628, 636 (E.D. Pa. 2004); Jermax, Inc. v. AK Steel Corp., No. Civ.A.09-4438, 2010 WL 2652276, at *7–8 (D.N.J. June 24, 2010).  This is particularly true if suit was filed within days of the set deadline.  See EEOC, 850 F.2d at 973; FMC Corp., 379 F.Supp.2d at 745.  In the instant case, the Hiams commenced the Massachusetts Action a week before the response expiration period set by M.G.L. c.93A and the Demand Letter.  This complaint was initially devoid of a claim based on the Massachusetts Act, which, as indicated above, was subsequently added to the action when the complaint was amended after expiration of the time period.  There is nothing in the record explaining why the Hiams could not wait one week to file a full and complete complaint.  This is particularly peculiar when considering that the Massachusetts Complaint and Demand Letter contain many of the same allegations and are largely premised on the same set of facts and demands, such that the filing of a single action after the time period had run would have been much more logical under these circumstances.  Thus, these facts weigh in favor of finding that the Massachusetts Action was improperly anticipatory.

Moreover, departure from the first-filed rule is well recognized in instances where the first-filing party "raced to the courthouse" in anticipation of the other party filing suit in a less favorable forum.  See Koresko, 403 F.Supp.2d at 399; FMC Corp, 379 F.Supp.2d at 745; Colony Nat'l Ins. Co. v. UHS Child. Servs., Inc., No. Civ.A.09-2916, 2009 WL 3007334, at *3 (E.D. Pa. Sept. 11, 2009).  While filing suit in a forum that is more favorable and convenient for the party does not automatically equate to forum shopping, such a filing may be improper if it was motivated by an inappropriate purpose or done to avoid suit in another more logical forum.  See EMS Acquisition Corp. v. Structure Probe Inc., No. Civ.A.07-03084, 2008 WL 375108, at *2 (E.D. Pa. Feb. 11, 2008)

(citing Zelenkofske, 1999 WL 592399 at *3).  Specifically, "[a] decision to file an action in another judicial district because the filing party believes the other district provides [it with] some benefit . . . is considered either forum shopping or forum avoidance[.]"  FMC Corp., 379 F.Supp.2d at 743.

Based on the record here, it appears that the Hiams commenced the Massachusetts Action in anticipation of Freemans' imminent filing of suit in another forum that was less favorable to them.  This is evidenced by the fact that the Hiams were aware that the Consignment Agreement includes a choice of law and forum provision providing that Pennsylvania law would apply to any dispute between the parties, and that Pennsylvania courts were the proper forum for such litigation.[8]  (See Consign. Agree. ¶ 10.1.)  In their Demand Letter, the Hiams acknowledge this clause, but assert that it should be narrowly construed to only apply to contractual disputes and not "sufficiently tort-like" claims such as those based on M.G.L. c.93A.  (Demand Letter at 4–5.)  Thus, these facts indicate that the Hiams were potentially shopping for a forum in Massachusetts when they filed their complaint there because they believed this forum provided them with a distinct "benefit"—the application of Massachusetts statutory law to their dispute.  See FMC Corp., 379 F.Supp.2d at 743.  Moreover, their proposed narrow interpretation of the clause further evinces a finding that they may have engaged in "forum avoidance" by filing first in Massachusetts so as to avoid suit in Pennsylvania. Id.

Finally, it has likewise been held that "[c]ourts may consider whether a filing preemptively foreclosed settlement negotiations when determining if a first-filed suit was commenced in bad faith."  Koresko, 403 F.Supp.2d at 402 (citing IMS Health, Inc. v. Vality Tech. Inc., 59 F.Supp.2d 454, 463 (E.D. Pa. 1999)); Jermax, 2010 WL 2652276, at *8.  Based on the evidence of record here,

---

[8] As discussed above, whether the governing forum selection clause was mandatory or permissive is an issue that is disputed by the parties.

23

it appears as though a potential settlement outside of court remained a viable option at the time that

the Hiams commenced the Massachusetts Action. This is evidenced by Freemans' timely Response

to the Demand Letter, in which it offered three proposals to resolve the dispute, and specifically

stated:

> Obviously Freemans does not know that following this proposal will produce an
> agreement, but Freeman's view is that doing so presents the best chance for a quick
> and fair resolution at the lowest possible cost. . . . *Please accept this letter as a
> written tender of settlement*. We believe that the proposal we have made here is
> reasonable in relation to an assessment of whether any injury has been suffered by
> Mr. and Mrs. Hiam[ ], and if so, determining its extent and a fair method of
> recompense.

(Pl.'s Resp. Opp'n, Ex. G attached to Ex. 1, Resp. to Demand for Relief Under M.G.L. c. 93A

("Response to Demand Letter") at 5) (emphasis added). This language indicates that negotiations

were ongoing and that settlement remained a possibility at this time. Both, however, were thwarted

by the Hiams's decision to pursue formal legal action. Such conduct weighs in favor of finding that

the initially-filed action was improperly anticipatory, such that a departure from the first-filed rule

would be justified.

Therefore, based on the above, the Court finds that, even if the first-first rule were to apply

here, Freemans has made a sufficient showing that the present circumstances fall within several

exceptions and thus warrant departure from the rule. As such, the Court declines to dismiss the

Pennsylvania Interpleader Action.

### C. Alternative Requested Remedies

In the alternative to dismissal, the Hiams request that the Interpleader Action be transferred

to the District of Massachusetts or that the Court stay the instant litigation "pending further

clarification from Freemans as to service" over Wang and Liu. (Defs.' Mot. Dismiss 15–16.) Most

recently, Plaintiffs appear to have converted their request to stay into a request to dismiss the Interpleader Complaint in its entirety based on improper service.[9]  (Pl.'s Reply 15–18.)

Transfer of a case is governed by 28 U.S.C. § 1404, which provides that: "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In ruling on motions to transfer pursuant to this statutory section, "courts have not limited their consideration to the three enumerated factors in § 1404(a)," but rather have considered "variants of the private and public interests protected by the language of [the statute.]" Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  In Jumara, the Third Circuit established two lists of twelve private and public interest factors for courts to consider when determining whether transfer is appropriate in a given case.  See id. at 879–80.  While Plaintiffs' Motion cursorily requests an alternate remedy of transfer to the District of Massachusetts, neither party has referenced § 1404(a) or any of the factors set forth by the Third Circuit, let alone explained why transfer is warranted here. Instead, their request for and response to the transfer is limited to one sentence each in their submitted briefing.  The Court declines to do the parties' work for them.  In any event, given the nature of the Court's finding that the first-filed rule does not apply under these circumstances and that the Interpleader Action should remain in Pennsylvania, the likelihood of transfer to the District of Massachusetts would be highly unlikely anyhow.  See Koresko, 403 F.Supp.2d at 403 ("Once it is determined that the first-filed rule applies, and no exceptions counsel against its application, the court must determine an appropriate remedy.").  As such, the Court need not opine on this point any

---

[9] Plaintiffs did not file a formal Motion seeking dismissal on these grounds, but rather "converted" their request for a stay into a request for dismissal.  While the filing of a formal motion would have been the appropriate method to make such a request, the Court will nonetheless consider Plaintiffs' additionally asserted reasons for dismissal.

further here.

On the other hand, whether or not this Court should stay the Interpleader Action is a matter of contentious dispute between the parties. The Hiams initially requested that the Court stay the action in Pennsylvania pending further clarification from Freemans as to service over Wang and Liu. (See Defs.' Mot. Dismiss 1, 15.) On April 26, 2012, Freemans responded that it successfully served Wang by hand while he was in New York, and has been in contact with Liu's American attorney in reference to service over him. (Pl.'s Resp. Opp'n 21.) Indeed, the record reflects that Wang recently accepted service of process and filed an Answer to the Interpleader Complaint and a cross-claim against the Hiams on May 12, 2012. (See Wang Answer.) In response to these developments, the Hiams have converted their request for a stay into a request for dismissal of the Interpleader Action in its entirety on the grounds that it suffers from fatal procedural defects. (Defs.' Reply 15–18.)

First, the Hiams aver that service of process over Wang was improper because Freemans' Interpleader Complaint is pled exclusively as statutory interpleader under 28 U.S.C. §§ 1335[10] and 2361,[11] which provide for nationwide personal service by a United States Marshal in any U.S.

---

[10] That section provides:

The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more . . . if:
(1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . .; and if (2) the plaintiff has deposited such money or property . . . into the registry of the court . . .

28 U.S.C. § 1335.

[11] This section provides:

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order

district. Specifically, Plaintiffs contend that Wang was not served by hand while he was in New York by a United States Marshal, and therefore the service was ineffective. In response, Freemans asserts that it invoked both statutory interpleader and diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in their Interpleader Complaint,[12] and that its method of service on Wang was proper under § 1332 and corresponding Rule 4 of the Federal Rules of Civil Procedure.[13] Indeed, the Interpleader Complaint makes clear that Freemans is invoking both forms of subject matter jurisdiction.[14] The Court therefore agrees with Plaintiff's assessment of this issue.[15]

---

restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order . . . shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

28 U.S.C. § 2361.

[12] This statute, known as the diversity of citizenship statute, provides:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties . . .

28 U.S.C. § 1332(a)(1–3.)

[13] Rule 4 governs procedures for the service of process on parties. See Fed. R. Civ. P. 4.

[14] Specifically, the Interpleader Complaint provides:

5.     This Court has subject matter jurisdiction of his action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

The Hiams also aver that the Interpleader Complaint should be dismissed because Freemans still has not served Defendant Liu with process, and is ultimately unlikely to do so given that the auction house has had substantial difficulty locating him in China and/or the United States. Plaintiffs further contend that, even if Liu was found in China, service on him would nonetheless be improper because statutory interpleader does not allow for service outside American borders.

As an initial matter, the Court has already determined that Freemans sufficiently invoked both statutory interpleader and diversity jurisdiction. As such, Freemans is not limited to nationwide service of process, and any method of service under Rule 4 of the Federal Rules is applicable here.

Furthermore, Freemans has continuously advised the Court and all relevant parties that it has made numerous attempts to serve Liu and has been in contact with his American attorney, and continues to "make efforts to serve [him] using appropriate methods of international service." (See Def.'s Resp. Opp'n, Ex. 3 at 17 n.33 ("Freemans Mot. to Dismiss Mass. Action").) Rule 4(m) provides that dismissal of a complaint for lack of service is warranted if the defendant has not been served within 120 days, and that the court may extend the time limit for service if the plaintiff can show good cause. See Fed. R. Civ. P. 4(m). Subpart m further provides that the 120-day time limit

---

6.   This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1335, statutory interpleader, because Freeman's [*sic*] has possession of money and property with a value in excess of $500, two or more adverse claimants of diverse citizenship may claim and/or may claim to be entitled to such money and/or such property, and Freeman's [*sic*] has deposited the money at issue into the registry of the Court and is filing a motion contemporaneous with this Complaint so that the Court may deem the proper manner in which to deposit the remainder of the property, or a bond in lieu of the remainder of the property, into the registry of the Court.

(Interpleader Compl. ¶¶ 5, 6.)

[15] The Court is puzzled by Plaintiffs' repeated failure to acknowledge Freemans' invocation of both §§ 1332 and 1335 in the Interpleader Complaint.

does not apply to service of an individual in a foreign country.  Id.[16]  Thus, regardless of whether Freemans attempts to serve Liu in China or while he is here in the United States, it is not yet precluded from doing so on account of timing restrictions.

Therefore, based on the foregoing, the Court denies Plaintiffs' alternative request to transfer this case to the United States District Court for the District of Massachusetts.  The Court likewise denies Plaintiffs' request to stay the Interpleader Action as moot, and finds that dismissal of the Interpleader Action on the grounds of improper service is not warranted under these circumstances.

## IV.    CONCLUSION

For the above reasons, the Hiams' Motion to Dismiss the Interpleader Complaint on account of the first-filed rule is denied on the grounds that they have not established that all parties would be subject to personal jurisdiction in the District of Massachusetts.  Even if the rule were to apply here, the facts of this case nonetheless fall within several exceptions to the rule.  The Court likewise denies Plaintiffs' request to transfer the case to the District of Massachusetts, and denies Plaintiffs' request to stay this action pending clarification of service on the foreign Defendants as moot. Finally, the Court denies Plaintiffs' request to dismiss the Interpleader Complaint in its entirety on the grounds of improper service of process.

---

[16] Rule 4(m) states in its entirety that:

If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).